[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married in East Newark, New Jersey on April 27, 2002. The plaintiff has lived continuously in Connecticut for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction.
This is the only marriage for the defendant and the second marriage for the plaintiff. There are no minor children who are issue of this marriage.
 I. Facts of the Case[1]
These parties met in December 2001 after the plaintiff responded to one of the defendant's newspaper personal ads. They married less than four months after their first date.
The plaintiff, a fifty-seven year old Portuguese native, has lived in the United States for over thirty-three years. He is generally healthy. The defendant is a forty-three year old Brazilian native. She entered the United States with a temporary visa that had expired approximately a year before she met the plaintiff. With neither proper documentation nor social security identification, while in New Jersey, she worked illegally as a nanny and housekeeper. She has not worked since the date of the marriage.[2]
The marital assets are limited. Since about 1980, the plaintiff has owned the martial residence, a multi-family dwelling in Bridgeport, Connecticut. Several of the apartments generate rental income. He also has an undeveloped parcel of realty in Bridgeport on which he stores his construction materials. Finally, the plaintiff has an interest in some land in Portugal. The defendant did not provide any funds toward either the maintenance or the improvement of any of these properties.
Locally the plaintiff keeps both his personal and business financial CT Page 2478-aq records in one account at the Hudson United Bank. Throughout the years, the plaintiff wired funds to a separate account in Europe in which he keeps his savings and funds that he utilizes when he visits relatives in Portugal. After this marriage, the plaintiff transferred thirty thousand dollars to the European account. Those transactions are noted on the plaintiff's financial affidavit.
As a self-employed mason contractor, the plaintiff's revenue is contingent upon favorable weather conditions. He can generate income during summer months but must use his savings for his expenses during the winter. He uses his European account for funds during the non-productive winter months. His average yearly net income is less than $500 per week.[3]
At the time of this marriage the defendant had saved over $4,000.[4]
Her only major health concern is that she suffers from serious dental problems. Consequently, during the parties' brief marriage, the plaintiff paid over $9,000 for his wife's dental reconstruction.
This marriage was doomed from its inception. By August of 2002, this marriage had broken down irretrievably. The parties had nothing in common. They did not know each other. The plaintiff was controlling. Further, although he enjoyed sexual relations, he was not willing to publicly acknowledge that the defendant was his wife. On the other hand, the defendant was moody and unpredictable. She monopolized the telephone, making it difficult for the plaintiff to maintain contact with his customers. Further, she did not relate well with her stepchildren and in-laws. Any chance of salvaging this marriage ended when the plaintiff's relatives visited the couple in August.
The ultimate reason for the marital breakdown was that both parties entered the relationship with self-serving motives. The plaintiff wanted a sex partner and a housekeeper.[5] The defendant wanted a sponsor who would facilitate her quest to receive a permanent resident alien status.
The defendant's desire throughout the courtship and marriage was to remain in the United States, a place that, in her own word, is a "very good country to earn money."[6] The defendant had a valid passport but an expired entry visa.[7] When she first arrived in the United States, she secured illegal employment with two separate families as a nanny and housekeeper.[8] She married the plaintiff in order to legitimize her presence in the United States and to facilitate her search for more permanent employment. Indeed, within days of the marriage, armed with a marriage certificate, she insisted upon traveling to Hartford in order to apply for a resident alien status. CT Page 2478-ar
This court rejects the defendant's claim that she relinquished everything for the plaintiff.[9] Her claim of deep conservatism is belied by the fact that she placed the personal ad that resulted in meeting a total stranger and marrying him within four months. As a mature woman, she was or should have been aware of the perils of marriage between strangers.
 II. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes Section 46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. Neither party shall receive any alimony.
3. The plaintiff shall transfer to the defendant the sum of $2,600 (two thousand, six hundred dollars).
4. The defendant shall receive all her personal effects and personal papers. The plaintiff shall arrange for the return of the defendant's possessions. The defendant bears the cost of the removal of this property. Any disputes regarding the distribution of this property shall be referred to the family relations' office for mediation and possible resolution. This court retains jurisdiction to resolve any disputes concerning distribution of personal property.
5. With the exception of the provisions of paragraph (3) above, the plaintiff is awarded sole interest on all property listed on his financial affidavit.
6. The defendant shall vacate the marital home on or before March 31, 2003.
7. Each party shall be responsible for his/her own attorneys fees.
8. The parties shall share the cost of the Portuguese speaking interpreter used during the dissolution trial.
9. Except to the extent more specifically set forth herein, each order CT Page 2478-as of the court is to be effectuated within thirty (30) days of the date of this decision.
10. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, JUDGE